8 A.3d 250 (2010)
417 N.J. Super. 25
In the Matter of DEBORAH HEART AND LUNG CENTER SFY 2009 CHARITY CARE SUBSIDY ALLOCATION.
No. A-2918-08T2.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 2010.
Decided December 3, 2010.
*251 Jonathan D. Weiner argued the cause for appellant Deborah Heart and Lung Center (Fox Rothschild, attorneys; Mr. Weiner, of counsel and on the briefs; Barry J. Muller and Abbey True Harris, Lawrenceville, on the briefs).
Susan J. Dougherty, Deputy Attorney General, argued the cause for respondent Department of Health and Senior Services (Paula T. Dow, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Dougherty and *252 Rachana R. Munshi, Deputy Attorney General, on the briefs).
Before Judges SKILLMAN, PARRILLO and ESPINOSA.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal is before us on a motion by appellant Deborah Heart and Lung Center challenging the respondent Department of Health and Senior Services' implementation of a section of the 2011 Appropriations Act that requires the 2011 fiscal year charity care subsidy payable to any hospital that received its full 2010 fiscal year charity care subsidy to be reduced by an amount equal to the reduction in the 2010 subsidy paid to other hospitals.
The charity care subsidy program appropriates funds to the Health Care Subsidy Fund, from which the Department of Health and Senior Services makes distributions to hospitals that provide care to patients free of charge. N.J.S.A. 26:2H-18.58 to -18.69; see generally Univ. of Med. & Dentistry v. Grant, 343 N.J.Super. 162, 165-66, 778 A.2d 473 (App.Div.2001). The program does not provide full funding for such care. Rather, the Legislature sets the amount of money appropriated for the entire program in the Annual Appropriations Act and, at least in recent years, also provides directions to the Department regarding the determination of the subsidy paid to each hospital.
Hospitals providing charity care are ranked according to their ratio of free care to total revenue, which is called the relative charity care percentage (RCCP), and hospitals that have higher RCCPs receive a greater percentage of the cost of their actual charity care than hospitals with smaller RCCPs. Hospitals are required to seek reimbursement from other sources, such as Medicaid, for charity care services. Any such reimbursement is deducted in determining the amount of a hospital's charity care subsidy. N.J.S.A. 26:2H-18.58b; N.J.A.C. 10:52-11.5. In some cases, a determination of a patient's qualification for reimbursement from another source is delayed, which requires care that was counted towards the charity care subsidy in one year to be deducted in determining the subsidy for a subsequent year. Such deductions are commonly referred to as "voids."
In the Annual Appropriations Act for State Fiscal Year (SFY) 2009,[1] the Legislature directed the Department to use data from calendar year 2007 in determining hospitals' charity care subsidies. L. 2008, c. 35; Assembly Bill 2800 at 91, lines 20-21. The Legislature directed the Department to establish a three-tiered system under which hospitals would be grouped by their RCCP rankings. Ibid. Under this system, there was a significant difference in the percentage of a hospital's charity care that was subsidized by appropriations from the Health Care Subsidy Fund depending upon whether the hospital was determined to fall within tier one, two or three.
The Department placed Deborah into the second tier for SFY 2009. As a result, Deborah received a substantially lower charity care subsidy in SFY 2009 than it would have received if it had been placed in the first tier.
After the Department rejected Deborah's objections to its placement in the second tier, Deborah filed this appeal challenging its placement and the Department's *253 determination of its 2009 charity care subsidy based on this placement. However, before the appeal was argued, the parties entered into a settlement agreement under which Deborah agreed to dismiss the appeal and the Department agreed to accelerate payment of Deborah's 2010 charity care subsidy. To effectuate this settlement, on December 31, 2009, the Department paid Deborah $2.5 million, which represented most of Deborah's 2010 charity care subsidy that otherwise would have been paid in monthly installments from February through June 2010. The parties memorialized this settlement by filing a stipulation of dismissal of this appeal, which is discussed later in the opinion. The Department subsequently paid Deborah its January 2010 monthly installment of $511,825, leaving only $59,125 of Deborah's 2010 charity care subsidy unpaid as of the end of January.
On February 11, 2010, the Governor issued Executive Order 14, which ordered the Director of the Division of Budget and Accounting "to identify and place into reserve items of appropriation pursuant to N.J.S.A. 52:27B-26 in an amount sufficient to ensure that the State budget is in balance." One action taken by the Director to comply with this order was to withhold distribution of $25.2 million, or 4.29%, of the 2010 charity care subsidy paid to hospitals. This reduction was allocated proportionately to hospitals depending upon the amount of their subsidies. However, Deborah, which as a result of the settlement had already received its entire 2010 charity care subsidy, except for $59,125, before issuance of Executive Order 14, was excluded from this reduction.
The legislative action that precipitated the motion now before the court was the inclusion in the 2011 Appropriations Act of a section which provides:
Notwithstanding the provisions of any law or regulation to the contrary, the amounts hereinabove appropriated from the Health Care Subsidy Fund for charity care payments are subject to the following condition: any hospital which received its entire fiscal year 2010 charity care allocation shall have its fiscal year 2011 charity care allocation reduced by 1/2 of 1 month of its fiscal year 2010 charity care allocation, subject to the Director of the Division of Budget and Accounting.
[L. 2010, c. 35; Senate Bill 3000 at 86, lines 46-50, to 87, line 1.]
This provision applies only to Deborah and four other hospitals that were also excluded from the reductions in the distribution of SFY 2010 charity care subsidies made in accordance with Executive Order 14. The Department has reduced Deborah's 2011 charity care subsidy in conformity with this provision of the Appropriations Act.
After receiving notice of this reduction, Deborah filed the motion presently before the court, which seeks a declaration that the Department is in breach of the settlement agreement that resolved its appeal of the Department's determination of its 2009 charity care subsidy. Based on this claimed breach, Deborah seeks an order compelling the Department to reimburse Deborah $255,913, which is the amount the Department has withheld in conformity with the 2011 Appropriations Act or, alternatively, to reinstate the appeal.
Upon initial review, we determined that the issues presented by this motion warranted plenary review and a decision by an opinion rather than simply by a motion order. Accordingly, we placed the appeal on an argument calendar. The parties subsequently filed supplemental briefs. We now deny the motion.

*254 I.
First, we consider Deborah's argument that notwithstanding the provision in the Appropriations Act mandating the $255,913 reduction in its SFY 2011 charitable care subsidy, the settlement agreement it entered into with the Department resolving its appeal from the Department's determination of its SFY 2009 charitable care subsidy compels the Department to distribute this additional $255,913.
Article VIII, section II, paragraph 2, of the New Jersey Constitution provides that "[n]o money shall be drawn from the State treasury but for appropriations made by law." Under this provision, "the power and authority to appropriate funds lie solely and exclusively with the legislative branch of government." City of Camden v. Byrne, 82 N.J. 133, 148, 411 A.2d 462 (1980). "There can be no redress in the courts to overcome ... the Legislature's action ... pursuant to its constitutional power over state appropriations." Id. at 149, 411 A.2d 462. Moreover, in addition to appropriating money for specified governmental purposes, an Appropriations Act may "include[ ] provisions that establish conditions, restrictions, or limitations on the expenditure, use, or application of appropriated funds." Karcher v. Kean, 97 N.J. 483, 491-92, 479 A.2d 403 (1984); see also Commc'ns Workers of Am. v. Florio, 130 N.J. 439, 452, 617 A.2d 223 (1992).
The inclusion in the 2011 Appropriations Act of a mandate that "any hospital which received its entire fiscal year 2010 charity care allocation shall have its fiscal year 2011 charity care allocation reduced by 1/2 of 1 month of its fiscal year 2010 charity care allocation," L. 2010, c. 35, Senate Bill 3000 at 86, lines 48-50, constitutes an exercise by the Legislature of this constitutional authority. Therefore, unless this provision violates the United States Constitution (a point addressed in section III of this opinion), the Department is required to comply with this mandate.
Deborah contends that the Legislature included this provision in the 2011 Appropriations Act only because the Department failed to disclose the terms of the settlement of this appeal to the Assembly Budget Committee. However, the Department's role in the Legislature's enactment of this provision is irrelevant. Regardless of whether the Department encouraged the Legislature to include this provision in the 2011 Appropriations Act or vigorously opposed it, the mandated reduction in Deborah's 2011 charity care subsidy constituted an exercise by the Legislature of its authority under Article VIII, section II, paragraph 2, of the New Jersey Constitution.

II.
We turn next to Deborah's alternative argument that even if the 2011 Appropriations Act precludes the Department from distributing the $255,913 reduction in Deborah's 2011 charity care subsidy mandated by that Act, this reduction constituted a breach of the settlement agreement, and therefore, Deborah is entitled to vacate the settlement and reinstate the appeal.
The sole obligation imposed upon the Department by the settlement agreement was to pay Deborah $2.5 million, as "an advance on Deborah's aggregate SFY 2010 Charity Care Subsidy Allocation, ... no later than 3:00 p.m. EST on December 31, 2009." The Department complied with this obligation by paying Deborah $2.5 million before the deadline established by the settlement agreement. Consequently, a stipulation of dismissal of this appeal was filed.
*255 The settlement agreement did not impose any other obligation upon the Department. Moreover, even if the agreement could be construed to impose an implied obligation upon the Department to pay Deborah the full amount of its SFY 2010 charity care subsidy notwithstanding the Governor's issuance of Executive Order 14 (a point it is unnecessary to decide because Deborah was in fact paid the full amount of the 2010 subsidy), the agreement clearly did not impose any obligation upon the Department with respect to the payment to Deborah of charity care subsidies in future fiscal years. Even more clearly, the agreement did not impose any obligation upon the Legislature or Governor in enacting the 2011 Appropriations Act. Indeed, as discussed in section I of this opinion, the Department would have no authority to bind the Legislature in enacting an appropriations act. Therefore, the Legislature's mandate that Deborah's SFY 2011 charity care subsidy be reduced by one-half of one month of its SFY 2010 charity care subsidy, which has been determined to be $255,913,[2] did not breach the settlement agreement between Deborah and the Department resolving the appeal of its SFY 2009 charity care subsidy.

III.
Deborah argues in a supplemental brief that the provision of the 2011 Appropriations Act that mandates the reduction of $255,913 from Deborah's fiscal year 2011 charity care subsidy violates Article I, section 10, of the United States Constitution, commonly referred to as the Contract Clause, which provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts."
When a party claims that governmental action violates the Contract Clause, "[t]he threshold inquiry is `whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" Energy Reserves Grp. v. Kan. Power & Light Co., 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569, 580 (1983) (quoting Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727, 736 (1978)). Unless this threshold showing is made, there is no need to consider whether the State has established a sufficient justification for the impairment. See id. at 411-12, 103 S.Ct. at 704-05, 74 L.Ed.2d at 581; Transp. Workers Union of Am., Local 290 v. Se. Pa. Transp. Auth., 145 F.3d 619, 621 (1998); Fid. Union Trust Co. v. N.J. Highway Auth., 85 N.J. 277, 296-97, 426 A.2d 488, app. dismissed, 454 U.S. 804, 102 S.Ct. 76, 70 L.Ed.2d 73 (1981).
We conclude, substantially for the reasons set forth in rejecting Deborah's breach of contract claim, that the provision of the 2011 Appropriations Act mandating the reduction of $255,913 from Deborah's SFY 2011 charity care subsidy did not result in any impairment, much less a substantial impairment, of Deborah's contractual rights under its settlement agreement with the Department. That agreement only obligated the Department to pay Deborah a $2.5 million advance on its SFY 2010 charity care subsidy. The agreement did not impose any obligation upon the Department or the Legislature regarding the charity care subsidy that would be paid to Deborah in SFY 2011. Therefore, *256 it was within the exclusive province of the Legislature, unconstrained by any limitation imposed under the Contract Clause, to determine how charity care subsidies would be allocated among the State's hospitals in SFY 2011.
Accordingly, Deborah's motion is denied.
NOTES
[1] The State's fiscal year runs from July 1st of the calendar year to June 30th of the next calendar year. Thus, the SFY 2009 was for July 1, 2008 to June 30, 2009.
[2] Although not essential to our decision, we note that this reduction resulted in Deborah's combined charity care subsidy for the 2010 and 2011 fiscal years being reduced by the same proportionate amount as other New Jersey hospitals that had their 2010 subsidies reduced as a result of the Governor's issuance of Executive Order 14. Therefore, we perceive no unfairness in this legislative action.